UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| EDDIE L. READUS, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 4:14-CV-56-HSM-CHS |
| ) | |
| MIKE PARRIS, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

In 2011, Eddie L. Readus ("Petitioner") was convicted of the sale of less than .5 grams of cocaine, delivery of less than .5 grams of cocaine, possession of .5 grams or more of cocaine with intent to sell, and possession of .5 grams or more of cocaine with intent to deliver, resulting in an effective thirty-year sentence. Petitioner now brings this pro se petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that judgment [Doc. 1]. Warden Mike Parris ("Respondent") has filed an answer to the petition [Doc. 15], arguing that relief is not warranted with respect to Petitioner's claims and, in support of those arguments, he has filed copies of the state court record [Doc. 22]. Thereafter, Petitioner filed a reply to Respondent's answer [Doc. 20].

For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

## I. PROCEDURAL HISTORY

Petitioner was convicted by a Bedford County Circuit Court jury, in count one, of sale of less than .5 grams of cocaine and, in count two, of delivery of less than .5 grams of cocaine, as

well as, in count three, of possession of .5 grams or more of cocaine with intent to sell and, in count four, of possession of .5 grams or more of cocaine with intent to deliver. *State v. Readus*, No. M2011-01918-CCA-R3CD, 2012 WL 4055343, at *1 (Tenn. Crim. App. Sept. 17, 2012). The trial court merged count two into count one and count four into count three and sentenced Petitioner to fifteen years on the two remaining convictions, to be served consecutively. *Id*. The Tennessee Court of Criminal Appeal ("TCCA") affirmed the convictions and sentence, and Tennessee Supreme Court denied Petitioner's application for permission to appeal [Doc. 22, Exhibits 7 and 9].

Next, Petitioner filed a petition for state post-conviction relief in the Bedford County Circuit Court. *Readus v. State*, No. M2013-01856-CCA-R3PC, 2014 WL 1494086, at *1 (Tenn. Crim. App. Apr. 15, 2014). A hearing on the matter was held and the post-conviction court denied relief. *Id*. The TCCA affirmed the post-conviction court's ruling. *Id*. Petitioner did not seek discretionary review of the Tennessee Supreme Court. *Id*. There followed this timely § 2254 habeas corpus application.

## II. BACKGROUND

The following factual scenario has been drawn from the facts contained in the TCCA's opinion on Petitioner's direct appeal.

> On September 10, 2010, a confidential informant made a controlled drug buy of crack cocaine from the defendant at the home of Brenda Newman in Shelbyville, Tennessee. As a result, the defendant was indicted for selling .5 grams or more of cocaine and delivering .5 grams or more of cocaine. Officers arrested the defendant later that day, finding in his possession an amount of powder cocaine, resulting in his also being indicted for possession of .5 grams or more of cocaine with intent to sell and possession of .5 grams or more of cocaine with intent to deliver.
>
> According to the State's proof at trial, Deputy Tim Miller, of the Bedford County Sheriff's Department and 17th Judicial District Drug Task Force, received information in September 2010 that a lot of drug activity was taking place at Brenda Newman's residence. In particular, Deputy Miller was contacted by a paid confidential informant on September 10 who told him specifically that the

2

defendant was selling crack cocaine out of Newman's residence. Deputy Miller, along with Agent Shane George of the Shelbyville Police Department and the 17th Judicial District Drug Task Force, met with the informant and arranged for her to conduct a controlled buy from the defendant. The officers searched the informant beforehand to ensure she did not have any contraband on her person and then issued her $100 with which to purchase the drugs. The informant was also outfitted with an electronic device to record her conversations.

Agent George drove the confidential informant to Newman's residence, with Deputy Miller following behind them. When they arrived in the area, the informant pointed out the defendant walking away from Newman's apartment, toward a market. However, by the time the officers moved into their respective surveillance positions, they saw the defendant walking back toward Newman's residence and entering the apartment.

Once the defendant was inside Newman's apartment, the informant exited Agent George's vehicle and walked toward Newman's apartment. As the informant neared the apartment, a man wearing a brown outfit approached her and they went into the apartment together. Inside, the informant made contact with the defendant and gave him $100 in exchange for a yellow bag containing "the dope," which she put in her bra. After being inside only "a relatively short period of time," the informant exited the apartment and returned to Agent George's vehicle, where she gave the bag of "dope" to Agent George. Deputy Miller, Agent George, and the informant then met in the parking lot of a nearby church, where Agent George handed Deputy Miller a small yellow bag containing crack cocaine that the informant had turned over to him. Deputy Miller secured the contraband and sent it to the Tennessee Bureau of Investigation ("TBI") Crime Laboratory for chemical analysis where it was determined to be .4 grams of crack cocaine. The officers searched and debriefed the informant who identified the defendant as the person from whom she purchased the crack cocaine.

Deputy Miller made the decision to arrest the defendant. Therefore, he and Agent George returned to Newman's address and conducted surveillance for approximately an hour and a half, noting there was "a ton of foot traffic" to and from Newman's residence. The officers entered Newman's apartment and arrested the defendant. When Agent George searched the defendant, he recovered a bag of powder cocaine, a small amount of marijuana, and two cell phones. He also recovered $411 cash, $100 of which was confirmed as the currency the informant used in making the controlled drug buy. The cocaine was packaged and put into evidence and sent to the TBI for testing, where it was determined to be powder cocaine in the weight of 1.5 grams. The defendant was *Mirandized,* waived his rights, and denied selling any drugs.

Following the conclusion of the proof, the jury convicted the defendant as charged, except in counts one and two it found that the amount he sold and delivered was less than .5 grams, not more than .5 grams. The defendant's conviction in count two

was merged into count one, and his conviction in count four was merged into count three.

On a later date, the trial court conducted a sentencing hearing. The presentence report was admitted at the hearing in which it was detailed that the forty-three-year-old defendant had forty prior felony and misdemeanor convictions, including nine drug-related convictions, nine theft or property-related convictions, seven assault convictions, and six weapons convictions. It was also noted in the report that the defendant had numerous probation revocations, dropped out of high school in the tenth grade, had regularly used drugs since the age of nineteen, and had unverifiable and unstable employment history.

In reaching the defendant's sentence, the trial court found that the defendant had a long history of criminal convictions and criminal conduct and placed great weight on that factor. The court observed that the defendant's employment history was "nil." With regard to count one, the court noted that the only possible sentence for a career offender on a Class C felony was fifteen years at sixty percent. The court imposed a Range II sentence of fifteen years on the Class B felony in count three. The court ordered that the sentences be served consecutively, finding the defendant to be an offender whose record of criminal activity was extensive.

*Readus*, 2012 WL 4055343 *1-2.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts, which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application"

prong of 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). The Supreme Court pointedly has observed, "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v.* Lett, 559 U.S. 766, 781 (2010). Further, factual findings sustained by the record are entitled to a presumption of correctness and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that he received ineffective assistance of counsel at trial and during the direct appeal of his conviction. Specifically, Petitioner alleges that he was denied effective assistance of counsel at trial due to counsel's failure to issue a trial subpoena for Christopher Trotter, and by counsel on appeal due to counsel's failure to challenge his sentence as excessive [Doc. 1]. Respondent argues that the claims alleged were adjudicated by the state court and resulted in a decision which must remain undisturbed under the deferential review standards set forth in 28 U.S.C. § 2254 [Doc. 15]. The state court decision should stand, Respondent argues, because that decision is not contrary to or an unreasonable application of well-established Supreme Court precedent or an unreasonable determination of the facts presented to the state court [*Id.*].

5

The TCCA, applying *Strickland*, concluded that Petitioner had not met his burden of proving deficient performance or prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, the task before the Court is to determine whether the state court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

A. **Applicable Law**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *See Strickland*, 466 U.S. at 687. Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* Here, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would have probably won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 1. Trial Counsel

Petitioner contends that counsel was ineffective for failing to subpoena Christopher Trotter at trial [Doc. 1 p. 5]. Petitioner asserts that Mr. Trotter would have testified that Petitioner was not selling drugs, and thereby "introduce reasonable doubt" into the minds of the jury [*Id.*]. By failing to have Mr. Trotter appear at trial, Petitioner claims he was "greatly prejudiced" because "the jury only had the State's case to base their decision on" [*Id.*].

Under *Strickland,* defense counsel has a "duty to make reasonable investigations" in preparation for trial or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *Shaw v. Perry*, 2017 WL 626606, at *7 (W.D. Tenn. Feb. 15, 2017). A criminal defendant alleging prejudice from trial counsel's failure to properly investigate and present mitigating evidence must show that there is a "reasonable probability" that the mitigating evidence not presented would have changed the outcome. *Strickland,* 466 U.S. at 694. Addressing Petitioner's contention that trial counsel rendered ineffective assistance by not calling Mr. Trotter as a witness, the TCCA recounted the testimony given at the post-conviction hearing:

> Regarding the Petitioner's claim that he received the ineffective assistance of counsel because trial counsel failed to subpoena Trotter for trial, trial counsel testified that the Petitioner did not give him Trotter's address or telephone number but that he was able to contact Trotter's wife, who told him that Trotter would not testify favorably for the Petitioner. Counsel also testified that he told the Petitioner about his conversation with Trotter's wife and that the Petitioner "just basically said let it go." Furthermore, the Petitioner failed to have Trotter testify at the evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State,* 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on any benefit these witnesses would have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. *Id.* Therefore, the evidence does not preponderate against the post-conviction court's finding that the Petitioner did not receive the ineffective assistance of counsel for counsel's failure to subpoena Trotter for trial.

*Readus*, 2014 WL 1494086, at *5.

The TCCA applied the two-part *Strickland* test to these facts and concluded "[P]etitioner failed to show either deficient performance or prejudice by failing to subpoena Mr. Trotter at trial" [Doc. 15 p. 13]. Although Petitioner argues in his reply that Mr. Trotter's testimony would have supported the argument that Petitioner was not selling drugs [Doc. 20 p. 6], Petitioner provided no reasonable probability that Mr. Trotter's testimony would have changed the outcome of the case. In fact, based on the testimony of counsel, it appears to be sound trial strategy to not call Mr. Trotter as a witness because he would have provided no compelling support in counsel's chosen defense. In order to avoid second-guessing counsel's strategic decisions, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy") (internal citation omitted).

Based on the evidence on record, this Court finds that Petitioner has not shown that he is entitled to relief under the AEDPA on this claim. First, the TCCA's determination was not "contrary to" *Strickland,* because the TCCA applied its two-part test to the facts. Second, the TCCA's ineffective assistance determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland's* standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). Further, the state court's determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted.

Based on these supportable findings, this Court finds that the TCCA reasonably concluded that counsel did not perform deficiently at trial by failing to call Mr. Trotter as a witness. Because the TCCA's ineffective assistance determination was not unreasonable, Petitioner is not entitled to relief on this claim.

### 2. Appellate Counsel[1]

Next, Petitioner contends that counsel's "failure to challenge consecutive sentencing on appeal amounted to deficient performance" [Doc. 1 p. 7]. Petitioner was sentenced to a total of thirty years for the sale and possession of cocaine [*Id.*]. Petitioner argues that his sentence is disproportionably long because "[t]hese crimes are not of violence, or in disregard to human life" nor was Petitioner "on parole or probation when the crimes were committed" [*Id.*]. Petitioner

---

[1] To the extent Petitioner argues that the state court's imposed sentence is excessive and in error, Petitioner is not entitled to federal habeas corpus relief because it is "not [a] cognizable" federal claim. *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003). The question of whether or not the state court erred in sentencing Petitioner to consecutive terms is a matter of state, not federal, law. *See Howard*, 76 Fed. Appx. at 53 ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").

believes that these sentences should have been set to be served concurrently and counsel's failure to raise this issue on appeal violated Petitioner's constitutional rights [*Id*.].

On appeal, counsel argued double jeopardy, multiplicity and merger, and that the sentence was excessive in length because Petitioner should not have been sentenced separately for counts one and three [Doc. 20 p. 7]. The TCCA noted that counsel's argument "clearly [was] not challenging the specific sentence imposed by the trial court but, instead, challenging that he was sentenced on both convictions rather than them being treated as one." [Doc. 20 p. 7 (citing *Readus*, 2012 WL 4055343, at *5)]. Petitioner argues that this comment by the TCCA "highlights the error that appellate counsel had made" by denying Petitioner a "typical sentencing review" [Doc. 20 p. 7].

In his response in opposition, Respondent cites to the TCCA opinion, stating that "the trial court was fully justified in sentencing [Petitioner] to consecutive terms based solely on his extensive record of criminal activity . . . regardless of the circumstances of his current crimes" [Doc. 15 p. 14]. Counsel testified on appeal that he told Petitioner that he was facing a thirty-year sentence if a jury convicted him at trial. *Readus*, 2014 WL 1494086, at *5. Counsel also testified that Petitioner did not have a work history, had multiple prior convictions, and was a career offender and that he did not raise consecutive sentencing on direct appeal because the argument would have been frivolous. *Id*. Petitioner's history includes forty prior felony and misdemeanor convictions, numerous probation revocations, and regular drug usage since he was nineteen years old. *Id*. Respondent asserts that "given [P]etitioner's indisputably extensive criminal record," the TCCA was not unreasonable in determining that counsel was not ineffective on direct appeal in failing to argue that Petitioner's sentence was excessive due to improper consecutive sentencing [Doc. 15 p. 14]. Under Tenn. Code. Ann. § 40-35-115(b)(2), "The court may order sentences to

run consecutively if the court finds by a preponderance of the evidence that: . . . (2) The defendant is an offender whose record of criminal activity is extensive." Petitioner does not argue that his prior criminal record is not extensive. *Readus*, 2014 WL 1494086, at *5.

After review of the record, this Court concludes that the post-conviction court's determination that Petitioner did not receive the ineffective assistance of counsel for counsel's failure argue excessive sentencing on direct appeal is not unreasonable, and Petitioner has not presented any evidence to support a finding otherwise. Petitioner is unable to satisfy the first prong of the *Strickland* test because he is unable to demonstrate that counsel's performance on appeal was deficient for failing to make a clearly futile and frivolous argument. Thus, Petitioner is not entitled to relief on this claim of ineffective assistance of counsel.

## V. CONCLUSION

For the above mentioned reasons, the Court finds that Petitioner's claims do not warrant the issuance of a writ of habeas corpus. Therefore, Petitioner's petition for a writ of habeas corpus will be **DENIED**.

## VI. CERTIFICATE OF APPEALABILITY

The Court must also consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if issued on COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 253(c)(2). Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude the issues raised are adequate to deserve further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been dismissed on procedural grounds, a substantial showing is

demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists would not conclude that Petitioner's claims are adequate to deserve further review. As such, because Petitioner has failed to make a substantial showing of the denil of a constitutional right, a COA will not issue.

**AN APPROPRIATE JUDGMENT ORDER WILL FOLLOW.**

ENTER.

        */s/ Harry S. Mattice, Jr.*
        HARRY S. MATTICE, JR.
        UNITED STATES DISTRICT JUDGE